BEN NELSON v. STATE OF FLORIDA

4 So. (2nd) 375
Special Division B
Opinion Filed October 24, 1941

*M. S. McGregor,* for Appellant;

*J. Tom Watson,* Attorney General, *Joseph E. Gillen,* Assistant Attorney General, and *Woodrow M. Melvin,* Special Assistant, for Appellee.

CHAPMAN, J.—The appellant, Ben Nelson, was indicted for murder in the first degree by a grand jury of Volusia County, Florida, for the murder of Leroy Heath on August 17, 1940. He was adjudged insolvent, placed upon trial and convicted of the crime

of manslaughter and was by the trial court sentenced to serve a period of ten years in the State Prison at hard labor. From this judgment of conviction in the Circuit Court of Volusia County an appeal has been perfected to this Court and several reasons urged for a reversal thereof.

On November 5, 1940, counsel for appellant filed a motion to require the state of Florida to furnish to him the names of the State's witnesses, as provided for by Section 129 of the Criminal Code. Court convened on November 15, 1940, and a jury was agreed upon and duly sworn, when counsel for the appellant moved the court for an order permitting or allowing him the privilege of a conference with certain named State's witnesses, and it is assumed that the conference was desired prior to the time that the witnesses were called to the stand. It will be observed that the indictment was returned by the grand jury on October 23, 1940, the written motion filed with the clerk on November 5, 1940, and we glean from the record that the motion was never presented to the trial court or an opportunity given him to rule upon the same, but after the jury was sworn to try the issues and the court was actually engaged in the trial and prior to the taking of any testimony, counsel for defendant, moved the court for an order allowing a conference with State witnesses, Lila Heath, Joe Graham, Deputy Sheriff McBride, and Mr. Thigpen.

The trial court did not deny the privilege of a conference, but in the exercise of his judicial discretion, it was his conclusion that the conference should be deferred until the conclusion of the State's case in chief. Section 129 of the Criminal Code makes it unnecessary to write or endorse on the back of any

indictment or information the names of the State's witnesses, but the court, on motion of counsel for defendant, can or may enter an order requiring the State Attorney to supply or furnish the names of the State's witnesses. It is contemplated that counsel for a defendant shall be diligent in the presentation of such motions and obtaining an order thereon. If the motion had been presented to the trial court prior to the 15th of November, 1940, at the time the court convened, an order no doubt would have been entered granting the motion. Counsel had the names of Lila Heath, Joe Graham, McBride and Thigpen, some of the State's witnesses, immediately after the jury was accepted and sworn. It is not necessary for a disposition of this appeal for use to decide whether or not counsel for the defendant is entitled to a conference with the State witnesses under the provisions of Section 129 of the Criminal Code, when it has been made to appear that the trial court abused its discretion.

The jury, having considered its verdict for a period of more than one hour, returned to the court room and informed the court that they were unable to agree upon a verdict. Nine of the jurors on being polled stated that it was impossible to agree upon a verdict and three of the jurors advised the court that there was a possibility of reaching a verdict. The court instructed the jury viz: "Now, gentlemen, the court charges you further, the jurors are admonished that there should be no mistrial in this case if it is possible for the jury to agree upon a verdict, and if they can do so without violating their conscientious convictions based upon the evidence, the jury should, therefore, lay aside pride of opinion and judgment, examine

all differences of opinion that there may be among
them in a spirit of fairness and candor and reason
together and talk over such differences and harmonize
them, if this is possible, so that this case may be
disposed of."

It is contended that the instruction as to the ren-
dition of a verdict given by the court was prejudicial
to the defendant and it is contended that nine of the
jurors surrendered their conscientious convictions,
based upon the evidence, because within a few min-
utes thereafter the challenged verdict was agreed
upon and the jury returned into court. It appears
that the instruction is fair, just, and reflected a clear
intention on the part of the trial court not to invade
the province of the jury, but to urge the jury to ex-
change views, discuss opinions and approach their
problems in the spirit of fairness and candor for the
purpose of harmonizing their differences. It seems
that such a charge is to be commended rather than
construed by this Court to be reversible error. The
question of notice provided for in Section 221 of the
Criminal Code to be given the prosecuting attorney
and counsel for the defendant was wholly unnecessary
when the challenged instruction was given, as it was
the duty of counsel engaged in the trial of the cause
to be in the court room and aid the court in the ad-
ministration of justice. We do not think that the
instruction given as to an honest and sincere effort
on the part of the jury to reach an honest and con-
scientious verdict was an additional or corrected
instruction within the meaning of Section 221, *supra*.

During the period of time the jury was deliberating
upon its verdict, it made known to the trial court that
it desired to have read certain portions of the testi-

mony introduced at the trial, namely, the testimony of the deceased's daughter, who, as shown by the record, was an eye witness to a part of the difficulty between deceased and defendant. The trial court denied the request, and because of this ruling it is here contended that the judgment should be reversed and a new trial awarded. Section 220 of the Criminal Code (c. 19554, Acts of 1939, Laws of Florida) provides:

"SECTION 220. JURORS MAY RETURN INTO COURTROOM FOR INSTRUCTION. After the jurors have retired to consider their verdict if they desire additional instruction upon any point of law arising in the cause or to have any testimony, about which they are in doubt or disagreement, read to them, they shall, upon their request, be conducted into the court room by the officer who has them in charge and there the court shall give them such additional instruction or shall order such testimony read to them. Such instruction may be given and such testimony read only after notice to the prosecuting attorney and to counsel for the defendant."

The Section *supra* makes it the duty of a trial court, when requested by a jury after the jury has retired to consider its verdict, to direct the reading of requested and designated testimony to the jury, which must be done in open court in the presence of counsel engaged in the trial of the cause or after giving notice to them of the reading thereof.

Careful consideration has been given to the testimony of the deceased's daughter. She was twelve years of age and in the sixth grade at school, and when the parties engaged in the altercation she was scouring the floor of the room occupied by them.

They had some words prior to the altercation. When the two men clinched and fell on the cot or bed, she ran from the room and returned with her uncle, Joe Graham. The wife of the deceased had reached the scene and the witnesses separated the combatants. Leroy Heath died about the time the witnesses separated the parties. It was error on the part of the trial court to decline the request of the jury under the circumstances presented, but, reviewing the record and considering the case in its entirety, we do not feel justified in reversing the judgment. The testimony as given by the daughter of the deceased harmonizes in many essentials with the testimony of the wife of the deceased and Joe Graham; and the defendant, as a witness, admitted the killing but contended that he was justifiable. The testimony of the defendant is not at variance with the requested testimony. We hold under the facts in the case at bar the refusal of the trial court to order read the requested testimony was not reversible error.

We have carefully read the testimony, heard oral argument at the bar of this Court and the briefs have been examined. We think the testimony is sufficient to sustain the verdict of manslaughter and there is no substantial error presented justifying a reversal of said judgment. It is true that the appellant had a good reputation among the people residing in the Barberville community and was highly respected; he had no court record to defend and creditable testimony clearly established good citizenship on his part. These several items should appeal strongly to the Board of Pardons. If the writer of this opinion had been on the jury he would have voted for an acquittal, but this Court cannot, under our jury system, substi-

tute its judgment for that of a jury. Considering the case in its entirety, we think, substantial justice was awarded in the lower court.

The judgment appealed from is hereby affirmed.

BROWN, C. J., TERRELL and BUFORD, J. J., concur.