210 So.2d 286 (1968)
Gary James SYLVIA, Appellant,
v.
The STATE of Florida, Appellee.
Frank Hiram BEAUCHAMP, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 67-430, 67-531.
District Court of Appeal of Florida. Third District.
May 7, 1968.
Rehearing Denied May 29, 1968.
*287 Milton E. Grusmark, Natalie Baskin, and Lawrence I. Hollander, Miami Beach, for Sylvia.
Engel & Pollack and Jack J. Taffer, Miami, for Beauchamp.
Earl Faircloth, Atty. Gen., and Arden M. Siegendorf and Arthur L. Rothenberg, Asst. Attys. Gen., for appellee.
Before CHARLES CARROLL, C.J., and BARKDULL and SWANN, JJ.
PER CURIAM.
Both of the above numbered appeals seek review of certain criminal proceedings wherein each of the appellants suffered an adverse jury verdict, judgment of conviction and sentence thereon. They have not been consolidated for appellate purposes, but were argued before court on the same day and will be disposed of by this consolidated opinion.
The record on appeal reveals the following: On or about February 28, 1967, one Julius Deitch (an undercover agent for the Wackenhut Corp.) met the appellant Beauchamp. He was introduced by a so-called mutual friend as "Julie". Thereafter, Deitch let it be known to Beauchamp that he was just released from jail. He also passed on the information that his trade was that of an "iceman" and he was in desperate need of money. On March 5, 1967 Beauchamp took Deitch for a ride to 480 N.E. 180 Drive, North Miami Beach, where Beauchamp pointed out the home of one Schiff and informed Deitch that the lady who lived there had purchased some large diamonds from her father, a jewelry salesman. Beauchamp further stated that these diamonds could be fenced for approximately $1,000.00. Thereafter, Deitch and Beauchamp discussed the robbery on various occasions, mostly pertaining to the fencing of the jewelry. On March 8, 1967, Deitch met with Beauchamp, at which time the latter informed him he wanted the appellant, Sylvia, to accompany them on the job. Thereafter, Deitch met with Beauchamp at the apartment of one Doreen Greer, where he was introduced to Sylvia who Beauchamp said was a good man and that they had worked together in the past. No further conversation was held regarding the robbery until about 6:00 P.M. March 11, 1967, when Deitch, Beauchamp and Sylvia proceeded to the location of the robbery, at which time Beauchamp again pointed out the house and stated that it was the house they were going to hit and they discussed where the car would be parked. At about 8:00 P.M. that evening, Deitch met Beauchamp and Sylvia at the apartment of Doreen Greer and the three men and one Mr. Fabian went to Beauchamp's apartment, which was in the same building. Upon their arrival, Beauchamp proceeded to lay out the structure (or floor plan) of the house to be robbed and they *288 agreed among themselves that Beauchamp and Sylvia would enter the house and Deitch would drive the car. At about 10:00 P.M. that evening, Deitch called Beauchamp and they arranged to meet at the Dog House Restaurant at 163 Street and W. Dixie Highway at 2:00 A.M. on March 12, 1967. Beauchamp and Sylvia arrived at the restaurant at about 2:20 A.M. and Beauchamp informed Deitch that Sylvia would drive and that he and Deitch would enter the house. They proceeded to the scene of the robbery. While traveling, Beauchamp provided stockings for masks, gloves, and some wire in the event they needed to tie anyone up. Upon arriving at the scene, Sylvia remained in the car and Beauchamp and Deitch proceeded to the house. Beauchamp entered the house first, followed by Deitch. Immediately upon entering, they were accosted by sheriff's deputies who were lying in wait for them. Beauchamp was arrested and the gun he was carrying, along with the wire, gloves, and stocking mask were seized. Deitch slipped out the door and left the scene. Thereafter, one of the deputies proceeded to the parked vehicle and placed Sylvia under arrest. Beauchamp and Sylvia were each charged with breaking and entering a dwelling house with intent to commit a felony therein, to wit: robbery. They each pleaded not guilty to the charge and demanded a jury trial.
Of course, certain of this evidence was in conflict but, at this stage of the proceedings, all conflicts in the evidence and all reasonable inferences therefrom are in favor of the verdict. Crum v. State, Fla.App. 1965, 172 So.2d 24; Mangel v. State, Fla.App. 1965, 179 So.2d 888; Walden v. State, Fla.App. 1966, 191 So.2d 68; Hennessy v. State, Fla.App. 1967, 198 So.2d 37.
The first error complained of is that the trial court committed error in failing to grant a severance because of the antagonistic positions of the several defendants. This is a discretionary matter with a trial judge. Suarez v. State, 95 Fla. 42, 115 So. 519; Hawkins v. State, Fla. 1967, 199 So.2d 276, 277. We fail to find an abuse of discretion on this record, although it might be better policy [when two defendants are charged and it is apparent, prior to trial, that one will put on no evidence and the other will rely on the defense of entrapment] that they not be tried together.
It is also urged that the trial court denied the appellants a fair trial by permitting the Information to be read to the jury; that it permitted comment by the prosecutor as to the guilt of the appellants and permitted a prosecution witness to connect himself with the Chief Executive of this State. It was no error to permit the Information to be read to the jury. Phillips v. State, 28 Fla. 77, 9 So. 826; Accord-Lamb v. State, 90 Fla. 844, 107 So. 530; Hall v. State, 119 Fla. 38, 160 So. 511; Roberts v. State, Fla.App. 1966, 188 So.2d 392. The comment by the prosecutor was not prejudicial, requiring a new trial. Tyson v. State, 87 Fla. 392, 100 So. 254; Grant v. State, Fla. 1965, 171 So.2d 361; §§ 54.23, 924.33, Fla. Stat., F.S.A. Neither was the connection between the witness and the Chief Executive prejudicial.
The appellant, Sylvia, also contends that the trial court erred in denying him a fair trial because the judgment rendered differs from the verdict. This matter will be referred to at the conclusion of this opinion.
Error is also urged in that the evidence was insufficient to sustain the verdict. The evidence, as outlined above, constitutes sufficient competent evidence to sustain the verdict and, therefore, with such in the record it is the duty of an appellate court not to disturb the verdict under review. Sharon v. State, Fla.App. 1963, 156 So.2d 677; Williams v. State, Fla. App. 1966, 187 So.2d 913; Richburg v. State, Fla.App. 1967, 199 So.2d 488.
*289 It is also urged that the trial court erred in failing to permit the evidence to be reopened after both parties had rested, upon motion by the defendants Beauchamp and Sylvia. This is another discretionary ruling by the trial judge [Ferrell v. State, 45 Fla. 26, 34 So. 220; Wilson v. Johnson, 51 Fla. 370, 41 So. 395; Pitts v. State, Fla. 1966, 185 So.2d 164, and it is incumbent upon the appellant to demonstrate an abuse of this discretion before this court would be warranted in reversing the convictions on this point. State v. Sears, 148 Fla. 89, 3 So.2d 721; Gilchrist v. State, Fla.App. 1965, 177 So.2d 777; Hanson v. State, Fla.App. 1966, 187 So.2d 54. It is apparent that the trial court exercised due diligence in determining what the additional evidence would disclose, and determined that it was something that could have been discovered prior to trial. Therefore, we find no error in his refusal to reopen the case. Harvey v. State, Fla. 1956, 87 So.2d 582; Roberts v. State, Fla. App. 1967, 195 So.2d 257.
The appellant, Beauchamp, also urges that the trial court erred during the course of the trial, when it refused to require the chief prosecution witness to produce written reports which he had made. These were in the nature of private communications and we do not find it error for the trial judge not to require their production when they were not being used by the witness to refresh his recollection. Whitaker v. Blackburn, Fla. 1954, 74 So.2d 794; Bedami v. State, Fla.App. 1959, 112 So.2d 284; Jackman v. State, Fla.App. 1962, 140 So.2d 627; State v. McCall, Fla. App. 1966, 186 So.2d 324; Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; Lambert v. United States, 5th Cir.1958, 261 F.2d 799.
Therefore, examining the errors raised by the appellants, we find no reason to upset the guilty verdict returned against each. However, the judgment rendered as to the appellant, Sylvia, differs from the verdict on the charge. The charge in the information was "* * * that FRANK HIRAM BEAUCHAMP and GARY JAMES SYLVIA on the 12th day of March, 1967, in the County and State aforesaid, did unlawfully and feloniously break and enter a dwelling house located at 480 Northeast 180th Drive, City of North Miami Beach, Dade County, Florida, property of HAROLD and ELAINE SCHIFF, with intent to commit a felony therein, to-wit: ROBBERY, * * *". The verdict was "Guilty", and the judgment reads "It appearing unto this Court that you, Gary James Sylvia, have been regularly tried and convicted of Unlawfully and feloniously breaking and entering a dwelling house located in Dade County, Florida, with the intent to commit a felony, to-wit: Grand Larceny * * *." It is apparent that the judgment as to Sylvia is erroneous.
The verdict as to the appellant, Gary James Sylvia, in case No. 67-430, be and the same is hereby affirmed, but the judgment of conviction and sentence be and the same are hereby reversed and set aside and the case as to the appellant, Sylvia, is returned to the trial court for the entry of an appropriate judgment on the verdict and sentence accordingly under the statutes of this State.
The verdict, judgment of conviction and sentence as to the appellant, Frank Hiram Beauchamp, in case No. 67-531, be and the same is hereby affirmed.
Affirmed in part; reversed in part with directions.